**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

| | |
|---|---|
| NIKE USA, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>REEL TENNIS AVENTURA, LLC d/b/a<br>Biscayne Tennis and Reel Tennis;<br>REEL TENNIS, LLC, d/b/a Biscayne Tennis<br>and Reel Tennis;<br>REEL TENNIS DAVIE, LLC, d/b/a Biscayne<br>Tennis and Reel Tennis;<br>REEL TENNIS PROMOTIONS, LLC, d/b/a<br>Reel Tennis;<br>ACE THE GAME, LLC d/b/a Reel Tennis;<br>CHRISTOPHER R. WILSON; and<br>ALEXANDER GIRON;<br><br>　　　　　　Defendants. | Civ. No. |

**COMPLAINT OF NIKE USA, INC. AGAINST REEL TENNIS AVENTURA, LLC, REEL TENNIS, LLC, REEL TENNIS DAVIE, LLC, REEL TENNIS PROMOTIONS, LLC, ACE THE GAME, LLC, CHRISTOPHER R. WILSON, AND ALEXANDER GIRON**

Nike USA, Inc. ("Nike") hereby files this complaint against: (1) Reel Tennis Aventura, LLC, doing business as Biscayne Tennis and Reel Tennis; (2) Reel Tennis, LLC, doing business as Biscayne Tennis and Reel Tennis; (3) Reel Tennis Davie, LLC doing business as Biscayne Tennis and Reel Tennis; (4) Reel Tennis Promotions doing business as Reel Tennis; (5) Ace the Game, LLC doing business as Reel Tennis (one through five referred to herein collectively as, the "Reel Tennis Entities"); (6) Christopher R. Wilson; and (7) Alexander Giron (one through seven referred to herein collectively as, the "Defendants") and states as follows:

1

## Preliminary Statement

1.      This is debt action to collect $211,465.22 plus interest, fees, and costs for athletic apparel and footwear the Reel Tennis Entities received from Nike but failed to pay for.  The Reel Tennis Entities have each guaranteed the obligations of the other and are responsible to Nike for the entire outstanding balance.  Christopher R. Wilson and Alexander Giron have also guaranteed payment to Nike for the debts and obligations of the Reel Tennis Entities.   Nevertheless, Defendants have breached their account agreements and guaranties to Nike by failing to compensate Nike for the products Nike provided.

## The Plaintiff

2.      Plaintiff, Nike USA, Inc., is an Oregon corporation whose principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

3.      Nike is organized in, domiciled in, and a citizen of Beaverton, Oregon.

## The Defendants

4.      Christopher R. Wilson ("Wilson") resides at 11470 NW 56th Drive, Apartment 101 in Coral Springs, Florida 33076.

5.      Wilson is domiciled in and a citizen of the State of Florida.

6.      Alexander Giron ("Giron") resides at 13821 Mustang Trail in Southwest Ranches, Florida 33330.

7.      Giron is domiciled in and a citizen of the State of Florida.

*Reel Tennis Aventura, LLC*

8.      Reel Tennis Aventura, LLC ("RTA") is a Florida limited liability company.

9.      RTA has a principal address of 11306 W. State Road 84 in Davie, Florida 33325.

10.     RTA does business as Biscayne Tennis.

11.     RTA also does business as Real Tennis.

12.     Wilson is the managing member of RTA.

13.     Wilson is domiciled in and a citizen of the State of Florida.

14.     John Habeeb, Jr. ("Habeeb") is a member of RTA.

15.     Habeeb resides at 2641 N. Flamingo Road, #1602 in Plantation, Florida 33323.

16.     Habeeb is domiciled in and a citizen of the State of Florida.

17.     RTA is organized in, domiciled in, and a citizen of the State of Florida.

18.     None of the members of RTA are citizens of the State of Oregon.

*Reel Tennis, LLC*

19.     Reel Tennis, LLC ("RT"), is a Florida limited liability company.

20.     RT has a principal address of 11306 W. State Road 84 in Davie, Florida 33325.

21.     RT does business as Biscayne Tennis.

22.     RT also does business as Real Tennis.

23.     Wilson is the President and managing member of RT.

24.     RT is organized in, domiciled in, and a citizen of Florida.

25.     No member of RT is a citizen of the State of Oregon.

*Reel Tennis Davie, LLC*

26.     Reel Tennis Davie, LLC ("RTD") is a Florida limited liability company.

27.     RTD has a principal address of 11306 W. State Road 84 in Davie, Florida 33325.

28.     RTD does business as Biscayne Tennis.

29.     RTD also does business as Real Tennis.

30.     Wilson is the President and managing member of RTD.

31.     RTD is organized in, domiciled in, and a citizen of Florida.

32.     No member of RTD is a citizen of the State of Oregon.

*Reel Tennis Promotions, LLC*

33.     Reel Tennis Promotions, LLC ("RTP") is a Florida limited liability company.

34.     RTP has a principal address of 12510 Pines Blvd in Pembroke Pines, Florida 33027.

35.     RTP does business as Real Tennis.

36.     Wilson is the managing member of RTP.

37.     RTP is organized in, domiciled in, and a citizen of Florida.

38.     No member of RTD is a citizen of the State of Oregon.

*Ace the Game, LLC*

39.     Ace the Game, LLC ("ATG") is a Florida limited liability company.

40.     ATG has a principal address of 11306 W. State Road 84 in Davie, Florida 33325.

41.     ATG does business as Real Tennis.

42.     Giron and Wilson are managing members of ATG.

43.     Giron is domiciled in and a citizen of the State of Florida.

44.     Wilson is domiciled in and a citizen of the State of Florida.

45.     ATG is organized in, domiciled in, and a citizen of Florida.

46.     None of the members of ATG are citizens of the State of Oregon.

**Jurisdiction and Venue**

47.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Nike is a citizen of a different state than all of the Defendants and all members of all Defendants that are limited liability companies, and the amount in controversy, exclusive of interest, fees, and costs, exceeds $75,000.

48.    Venue in this District is proper pursuant to 28 U.S.C. §1391.

49.    All of the members of RTA, RT, RTD, RTP and ATG are citizens of the State of Florida.  Nike is a citizen of the State of Oregon.

## Background Facts

A.    **The Account Agreements**

50.    Nike and RTA are parties to the Nike USA, Inc. Account Agreement dated December 17, 2014 (the "2014 Account Agreement").  A copy of the 2014 Account Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

51.    Nike and RTA are parties to the Nike USA, Inc. Account Agreement dated September 21, 2018 (the "2018 Account Agreement," with the 2014 Account Agreement, the "Account Agreements").  A copy of the 2018 Account Agreement is attached hereto as **Exhibit 2** and is incorporated herein by reference.

52.    The terms of the 2014 Account Agreement and the 2018 Account Agreement are substantially similar.

53.    The Account Agreements include Exhibit A, NIKE USA, INC. TERMS AND CONDITIONS OF SALE (the "Terms and Conditions") which are incorporated into and apply to every purchase order submitted by RTA.

54.    The terms of each Nike invoice are substantially similar to the Terms and Conditions.

55.    Paragraph 3 of the Terms and Conditions requires RTA to pay Nike for all goods sold when due pursuant to Nike's invoice terms, or if none is specified, within 30 days after the date of that invoice.

56.     Paragraph 3 of the Terms and Conditions requires RTA to dispute an invoice from Nike within thirty days after the date the invoice is due.  If RTA does not dispute an invoice within thirty days after the date the invoice is due, then, pursuant to the Account Agreements, the invoice will be deemed to be an account stated.

57.     Paragraph 6 of the Terms and Conditions prohibits RTA from selling Nike products under any store name or at any physical store other than under the store name and at the particular physical store listed in Exhibit B to the Terms and Conditions.

58.     Exhibit B of the 2014 Account Agreement lists 19021 Biscayne Blvd., Aventura, Florida 33180 as an approved brick and mortar retail location.

59.     Exhibit B of the 2018 Account Agreement lists 11306 West State Road 84, Davie, Florida, 33325 as an approved brick and mortar retail location.

60.     In the Account Agreements, Nike did not approve any website for the sale of Nike products.

61.     The Account Agreements provide that:

> APPROVAL BY NIKE OF ONE STORE LOCATION DOES NOT MEAN OTHER STORE LOCATIONS WILL ALSO BE APPROVED.  SIMILARLY, APPROVAL BY NIKE OF AN APPLICATION FOR A STORE DOES NOT MEAN THAT THE CUSTOMER IS AUTHORIZED TO SELL PRODUCT BY CATALOGUE, OR THROUGH A WEBSITE OR ANY OTHER ELECTRONIC MEANS.

62.     Paragraph 3 of the Terms and Conditions provides that, "[a]ny sum not paid when due is subject to a service charge of 1.5% per month or the maximum rate permitted by law, whichever is lower."

63.    Paragraph 16 of the Terms and Conditions provides that "Customer will pay all costs, collection agency fees, expenses, reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by NIKE in connection with the collection of any past due sums."

64.    Paragraph 16 of the Terms and Conditions provides that:

> The Agreement, and all disputes arising out of the Agreement or out of the relationship between NIKE and Customer, will be governed by the laws of the State of Oregon . . . Customer irrevocably consents to the jurisdiction of the state and federal courts located in the State of Oregon in connection with any action arising out of or in connection with the Agreement and waives any objection that such venue is an inconvenient forum.  Customer will not initiate an action against Nike in any other jurisdiction.  Nike may bring an action in any forum.

65.    Paragraph 20 of the Terms and Conditions provides that, "[n]othing in this Agreement or in in these Terms and Conditions shall be construed to imply that Customer is required to place Orders or that NIKE is required to accept Orders."

66.    Paragraph 20 of the Terms and Conditions provides that, "[u]pon termination of the Parties' relationship, the terms, conditions, and representations herein shall remain in full force and effect with respect to all Orders accepted by NIKE prior to the date of termination."

67.    The Account Agreements are supported by consideration.

68.    In exchange for the execution of the Account Agreements, Nike agreed to do business or continue to do business with the RTA in accordance with the Account Agreements.

69.    Nike relied on the Account Agreements in doing business with and extending credit to the Reel Tennis Entities.

70.    Nike relied on, *inter alia*, the Account Agreements in making decisions to extend credit and actually extending credit to RTA.

**B. The 2015 Personal Guaranty**

71.     On January 15, 2015, Habeeb and Wilson (collectively, the "2015 Guarantors") provided Nike USA, Inc. and/or any of its affiliates with a Personal Guaranty (the "2015 Personal Guaranty"). The Personal Guaranty is attached hereto as **Exhibit 3** and is incorporated herein by reference.

72.     In the 2015 Personal Guaranty, Habeeb and Wilson personally guaranteed to Nike the obligations of the Real Tennis Entities doing business as Biscayne Tennis.

73.     The obligations of Habeeb and Wilson set forth in the 2015 Personal Guaranty are joint and several.

74.     In the 2015 Personal Guaranty, the 2015 Guarantors unconditionally, absolutely and irrevocably guaranteed and promised to pay Nike, when due, all indebtedness owed to Nike by the Real Tennis Entities doing business as Biscayne Tennis, including at least RTA, RT, and RTD (collectively, the "Customer").

75.     The 2015 Personal Guaranty provides that indebtedness "is used in its most comprehensive sense and includes all debts, obligations and liabilities of every nature owed by Customer to NIKE USA, Inc. and/or any of its affiliates whether now in existence or arising at any time in the future, including principal, interest charges, attorneys fee and costs."

76.     The Customer executed the 2015 Personal Guaranty to induce Nike to extend credit to the Customer for the sale of Nike products.

77.     Nike extended credit to the Customer because the 2015 Personal Guaranty was provided to Nike.

78.     Nike relied on, *inter alia*, the 2015 Personal Guaranty in making decisions to do business with the Real Tennis Entities.

79.    The 2015 Personal Guaranty provides that it:

> will remain in effect until Guarantor gives NIKE written notices by certified mail of Guarantor's termination of this Guaranty ("Notice of Termination").  The Notice of Termination must be addressed to the NIKE entity extending credit to Customer and sent to One Bowerman Drive, Beaverton, Oregon 97005-6453, Attention Credit Manager.

80.    John Habeeb, Jr. has not terminated the 2015 Personal Guaranty.

81.    Christopher R. Wilson has not terminated the 2015 Personal Guaranty.

82.    Habeeb received a chapter 7 bankruptcy discharge pursuant to 11 U.S.C. § 727 on May 10, 2019 in Case No. 18-23598-JKO pending before the United States Bankruptcy Court for the Southern District of Florida.

**C.  The 2020 Personal Guaranties**

83.    On September 21, 2020, Alexander Giron provided Nike USA, Inc., and all of its affiliates with the Personal Guaranty dated May 22, 2020 (the "Giron Personal Guaranty").  The Giron Personal Guaranty is attached hereto as **Exhibit 4** and is incorporated herein by reference.

84.    On May 27, 2020, Wilson provided Nike USA, Inc., its successors and assigns with the Nike Personal Guaranty dated May 22, 2020 (the "2020 Wilson Personal Guaranty," collectively, with the Giron Guaranty, the "2020 Personal Guaranties").  The Wilson Personal Guaranty is attached hereto as **Exhibit 5** and is incorporated herein by reference.[1]

85.    In the 2020 Personal Guaranties, Giron and Wilson (collectively, the "2020 Guarantors") unconditionally, absolutely and irrevocably guaranteed and promised to pay to Nike when due all indebtedness owing to Nike by the Reel Tennis Entities.

86.    The initial paragraph of the 2020 Personal Guaranties provides that indebtedness "is used in its most comprehensive sense and includes all debts, obligations and liabilities of every

---

[1] Wilson intentionally omitted pages 2-6 from the 2020 Wilson Guaranty.

nature owed by Customer to Nike, whether now in existence, or arising at any time in the future, including principal, interest, charges, attorney fees, and costs."

87.    The 2020 Guarantors executed the 2020 Personal Guaranties to induce Nike to do business with the Reel Tennis Entities.

88.    In exchange for the execution of the 2020 Personal Guaranties, Nike agreed to continue to do business with the Reel Tennis Entities in accordance with the terms and conditions of the Account Agreements and agreed to extend credit to the Reel Tennis Entities.

89.    Nike relied on, *inter alia*, the 2020 Personal Guaranties in making decisions to do business with the Reel Tennis Entities.

90.    Alexander Giron personally guaranteed payment to Nike of the debts of the Reel Tennis Entities.

91.    Christopher R. Wilson personally guaranteed payment to Nike of the debts the Reel Tennis Entities.

92.    Alexander Giron has not terminated the Giron Personal Guaranty.

93.    Christopher R. Wilson has not terminated the 2020 Wilson Personal Guaranty.

**D.  The Giron Personal Guaranty**

94.    Paragraph 5 of the Giron Personal Guaranty provides that Giron will "indemnify Nike and hold Nike harmless from all obligations, demands, claims, and liabilities asserted by any other party, and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with" the Reel Tennis Entities or Giron.

95.    Paragraph 7 of the Giron Personal Guaranty provides that it:

> will remain in effect until Guarantor gives Nike written notice by
> certified mail, return receipt requested, of Guarantor's termination
> of this Guaranty ("Notice of Termination").   The Notice of
> Termination must be addressed to the Nike USA, Inc. and sent to

One Bowerman Drive, Beaverton, Oregon 97005-6453, Attention Credit Manager.

96.     Paragraph 9 of the Giron Personal Guaranty states that Giron:

[C]onsents to the jurisdiction of and venue in any federal court within the state of Oregon or any other location where Guarantor resides, is located, formed, owns property, or does business, and agrees that Guarantor will not initiate any legal proceeding against Nike related to this Guaranty in any jurisdiction other than any state or federal court within the state of Oregon. Nike, however, may file suit to enforce this Guaranty in any court of competent jurisdiction. Guarantor also agrees that the laws of Oregon (without reference to its choice of law provisions) will apply.

97.     Paragraph 11 of the Giron Personal Guaranty provides that Giron:

is executing this Guaranty on behalf of Guarantor's community property, marital property, jointly held property, property held by tenants in common, property held as joint tenants with or without right of survivorship, property held by tenancy by the entirety, and property held in any way with any other person or thing.

**E.  The Cross Corporate Guaranty**

98.     On June 4, 2020, Wilson, as authorized signatory, executed the Corporate Guaranty dated May 22, 2020 (the "Cross Corporate Guaranty") on behalf of the Reel Tennis Entities "and any entity doing business as, or using the fictitious name of, Reel Tennis" (each, a "Guarantor" and, collectively, the "Corporate Guarantors").  The Cross Corporate Guaranty is attached hereto as **Exhibit 6** and is incorporated herein by reference.

99.     In paragraph 1 of the Cross Corporate Guaranty, the Corporate Guarantors "unconditionally, absolutely and irrevocably guarantee[d] and promise[d] to pay to Nike when due all payments and indebtedness owed by every other [Corporate] Guarantor to Nike."

100.    Paragraph 1 of the Cross Corporate Guaranty defines the term "indebtedness" as:

used in its most comprehensive sense and includes all of the Current Outstanding Balance owed or to be owed by Guarantors to Nike, all future indebtedness that will be owed by Guarantors to Nike, and all

of Guarantors' obligations to Nike pursuant to any customer agreements, applications, invoices, and documentation governing Nike and Guarantors' relationship. The Guaranty is binding on all Guarantors regardless of the nature of their businesses or whether any one or more of the Guarantors is not in good standing, administratively dissolved, involuntarily dissolved, or voluntarily dissolved.

101.    In the Cross Corporate Guaranty, each of the Reel Tennis Entities guaranteed and promised to pay Nike when due all payments and indebtedness owed to Nike by every other Reel Tennis Entity.

102.    Paragraph 2 of the Cross Corporate Guaranty provides that the Cross Corporate Guaranty is effective immediately and "is an absolute, continuing, unconditional and irrevocable Guaranty."

103.    Paragraph 5 of the Cross Corporate Guaranty provides that the [Corporate] Guarantors' obligations to Nike under the Corporate "Guaranty are direct, primary, independent and unconditional."

104.    Nike required the Cross Corporate Guaranty from the Reel Tennis Entities because the Reel Tennis Entities do not appear to observe corporate formalities that would distinguish one of the Reel Tennis Entities from another, and several, if not all, of the Reel Tennis Entities do business under the name Biscayne Tennis and Real Tennis.

105.    The Cross Corporate Guaranty was signed to induce Nike to do business with the Reel Tennis Entities.

106.    Because the Reel Tennis Entities executed the Cross Corporate Guaranty, Nike extended credit to the Reel Tennis Entities.

107.    Nike relied on, *inter alia*, the Cross Corporate Guaranty in making decisions to do business with the Reel Tennis Entities.

108.    The Cross Corporate Guaranty confirms that each Guarantor "is under common ownership or control with the other and has an interest in the success of the other, and each [Corporate Guarantor] benefits from the relationships of each [individual] Guarantor with Nike."

109.    The Cross Corporate Guaranty confirms that the Reel Tennis Entities were supplied with Nike goods through the purchase of Nike goods by RTA and that all Guarantors "have benefitted from the flow of goods among the Guarantors or that certain Guarantors anticipate being supplied with Nike goods in the future.

110.    Upon information and belief, assets and liabilities are customarily transferred and shared by and among the Reel Tennis Entities.

111.    Paragraph 7 of the Cross Corporate Guaranty provides that the Corporate "Guarantors shall indemnify Nike and hold Nike harmless from all obligations, demands, claims, and liabilities, and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with the [Corporate] Guarantors."

112.    Paragraph 9 of the Cross Corporate Guaranty provides that

> The undersigned [Christopher R. Wilson] personally represents and warrants that the undersigned has provided Nike with full and complete disclosures of all parent, affiliate, subsidiary, and related entities to the Guarantors through the submission of the Nike USA, Inc Cross-Corporate Guaranty Application, and that the information contained therein is true, accurate, and complete.

113.    Paragraph 11 of the Cross Corporate Guaranty provides that:

> Nike will be entitled to collect from Guarantors all of Nike's costs, including collection agency fees and attorney fees incurred in connection with collection efforts, including, but not limited to, at trial and on appeal.

114.    Paragraph 11 provides that Nike may file suit to enforce the Cross Corporate Guaranty in any court of competent jurisdiction.

115.    Paragraph 10 of the Cross Corporate Guaranty provides that it:

> will remain in effect until Nike receives written notice by certified mail, return receipt requested, of each Guarantor's termination of this Guaranty ("Notice of Termination"). The Notice of Termination must be addressed to Nike USA, Inc., One Bowerman Drive, Beaverton, Oregon 97005-6453, Attention: Credit Manager.

116.    The Reel Tennis Entities have not terminated the Cross Corporate Guaranty.

**F.  Nike's Allocation of Product**

117.    Nike allocates high-demand product to its retailers based on market conditions and demand.

118.    Nike monitors supply and demand of its new and most demanded product so that each market is properly supplied with sufficient product to reasonably meet customer expectations.

119.    To maintain a balance of supply and demand, Nike relies on its retail customers to supply products to consumers based on approved locations and methods of sale.

120.    If Nike's retailers order quantities in excess of what Nike's retailers can sell to consumers, or sell Nike products through unapproved channels, it is to the detriment of other Nike retailers and consumers in other stores and other markets.

**G.  The Reel Tennis Entities' Unauthorized Sale through Unapproved Channels**

121.    In 2020, Nike learned that the Reel Tennis Entities sold Nike products through unapproved retail channels.

122.    The Reel Tennis Entities sold, through unauthorized third parties and at unauthorized locations, products that RTA had obtained from Nike through the Account Agreements and during Nike's reliance on the Personal Guaranties and the Cross Corporate Guaranty (collectively, the "Guaranties").

123.    In addition, ATG sold, through a well-known, third-party internet retailer, products that RTA had obtained from Nike through the Account Agreements.

124.    On the third-party internet retailer website, ATG listed its business address as 11306 W. State Road 84, Davie, Florida 33325-4000.

125.    Nike never approved the Reel Tennis Entities' sale of Nike products through third-party retailers or online.

126.    The third-party retailers were not authorized by Nike to sell Nike products, had no business relationship with Nike, and were not Nike customers.

127.    The product Nike sold to the Reel Tennis Entities was intended solely for sale by the Reel Tennis Entities to customers of the Reel Tennis Entities at approved retail brick-and-mortar locations.

128.    Nike refers to the sale of Nike product through unauthorized retail channels as transshipping.

129.    The Reel Tennis Entities' sale of the Nike product through unauthorized retail channels is unauthorized transshipping.

## I.      COUNT I – ACCOUNT STATED
### Nike USA, Inc. v. Reel Tennis Aventura, LLC

130.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

131.    An account existed between Nike and RTA.

132.    Nike issued invoices to RTA for goods and services Nike provided to the Reel Tennis Entities and made a demand for payment.  Such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

133.    The Account Agreements require RTA to dispute an invoice from Nike within thirty days after the date the invoice is due.  If RTA does not dispute an invoice within thirty days after the date the invoice is due, then, pursuant to the Account Agreements, the invoice is deemed an account stated.

134.    Each invoice issued by Nike after the creation of RTA's account with Nike states that "the amount reflected in each NIKE invoice will be deemed an account stated unless [RTA] disputes the amount of that invoice in writing within 30 days after the date that invoice is due."

135.    As of the date of the filing of this Complaint, RTA is indebted to Nike in an amount no less than $211,465.22, exclusive of interest, fees and costs.  A copy of the Account Statement showing the amount RTA owes to Nike is attached hereto as **Exhibit 7** and is incorporated herein by reference.

136.    Despite Nike's demand, the foregoing amount has not been paid to Nike as of the filing of this Complaint.

137.    The foregoing amount continues to accrue interest at a rate of 1.5% per month or the maximum rate permitted by law, whichever is lower.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Reel Tennis Aventura, LLC in an amount no less than $211,465.22, plus all of Nike's costs, collection agency fees, interest, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

## II.    COUNT II – ACTION ON ACCOUNT
### Nike USA, Inc. v. Reel Tennis Aventura, LLC

135.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

136.    An account existed between Nike and RTA.

137.    Nike issued invoices to RTA for goods and services Nike provided to the Reel Tennis Entities and has made a demand for payment.  Such invoices were due and payable to Nike more than thirty days prior to the filing of this Complaint.

138.    As of the date of the filing of this Complaint, RTA is indebted to Nike in an amount no less than $211,465.22 exclusive of interest, fees and costs.  A copy of the Account Statement showing the amount RTA owes to Nike is attached hereto as **Exhibit 7** and is incorporated herein by reference.

139.    Despite Nike's demand, the foregoing amount has not been paid to Nike as of the filing of this Complaint.

140.    The foregoing amount continues to accrue interest at a rate of 1.5% per month or the maximum rate permitted by law, whichever is lower.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Reel Tennis Aventura, LLC in an amount no less than $211,465.22, plus all of Nike's costs, collection agency fees, interest, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

### III.    COUNT III – BREACH OF CONTRACT
### Nike USA, Inc. v. Reel Tennis Aventura, LLC

141.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

142.    RTA and Nike are parties to the Account Agreements, contracts that requires RTA to pay Nike for goods and services provided to the Reel Tennis Entities.

143.    The Reel Tennis entities purchased goods from Nike.

144.    Nike provided goods and services to the Reel Tennis Entities, which was Nike's substantial performance pursuant to the Account Agreements.

145.    Nike has invoiced RTA for the amounts set forth in Count I of this Complaint.

146.    Nike has made a demand to RTA for the amounts set forth in Count I of this Complaint.

147.    Nike has resolved all discrepancies and issues raised by the RTA, if any, with respect to each invoice issued by Nike.

148.    Nonetheless, despite Nike's demand, RTA has failed to pay Nike for the goods and services Nike has provided.

149.    RTA's failure to pay Nike is a breach of the Account Agreements.

150.    RTA's breach of the Account Agreements has caused Nike to suffer damages in an amount no less than $211,465.22.

WHEREFORE, Nike requests that judgment be entered in favor of Nike and against Reel Tennis Aventura, LLC, in an amount no less than $211,465.22, plus all of Nike's costs, collection agency fees, interest, expenses, and reasonable attorney fees (whether incurred prior to, at trial or on appeal) incurred by Nike in connection with Nike's collection efforts.

## IV.    COUNT IV – BREACH OF 2015 PERSONAL GUARANTY
### Nike USA, Inc. v. Christopher R. Wilson

151.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

152.    The 2015 Personal Guaranty is a contract.

153.    In the 2015 Personal Guaranty, Wilson personally guaranteed payment of the debts of the Customer to Nike in exchange for the Customers' ability to conduct business with Nike and in exchange for Nike's extension of credit to the Customer.

154.    Nike provided goods and services to the Customer, and extended credit to the Customer, which was Nike's substantial performance pursuant to the 2015 Personal Guaranty.

155.    Because of the Personal Guaranty, Wilson is personally obligated to Nike in an amount not less than $211,465.22 plus costs, collection agency fees, expenses, interest, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

156.    Nike has demanded payment from Wilson, but he has failed to pay Nike.

WHEREFORE, Nike requests that judgment be entered against the Christopher R. Wilson in an amount no less than $211,465.22 plus all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## V.    COUNT V – BREACH OF 2020 PERSONAL GUARANTIES
### Nike USA, Inc. v. Christopher R. Wilson and Alexander Giron

157.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

158.    The 2020 Personal Guaranties are contracts.

159.    In the 2020 Personal Guaranties, Wilson and Giron personally guaranteed payment of the debts of the Reel Tennis Entities to Nike in exchange for the Reel Tennis Entities' ability to conduct business with Nike and in exchange for Nike's extension of credit to the Reel Tennis Entities.

160.    Nike provided goods and services to the Reel Tennis Entities, and extended credit to the Reel Tennis Entities, which was Nike's substantial performance pursuant to the 2020 Personal Guaranties.

161.    Because of the 2020 Personal Guaranties, Wilson and Giron are personally obligated to Nike in an amount not less than $211,465.22 plus costs, collection agency fees,

expenses, interest, attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

162.    Nike has demanded payment from Wilson and Giron, but Wilson and Giron have failed to pay Nike.

WHEREFORE, Nike requests that judgment be entered against Christopher R. Wilson and Alexander Giron in an amount no less than $211,465.22 plus all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## VI.    COUNT VI – BREACH OF CORPORATE GUARANTY
### Nike USA, Inc. v. Reel Tennis Aventura, LLC, Reel Tennis, LLC, Reel Tennis Davie, LLC, Reel Tennis Promotions, LLC, and Ace the Game, LLC

163.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

164.    The Cross Corporate Guaranty is a contract.

165.    In the Cross Corporate Guaranty, each Reel Tennis Entity guaranteed payment to Nike of the debts of every other Reel Tennis Entity.

166.    The Reel Tennis Entities provided the Cross Corporate Guaranty to Nike in exchange for the Reel Tennis Entities' ability to continue to conduct business with Nike and in exchange for Nike's extension of credit to the Reel Tennis Entities.

167.    Nike provided goods and services to the Reel Tennis Entities, and extended credit to the Reel Tennis Entities, which was Nike's substantial performance pursuant to the Cross Corporate Guaranty.

168.    Because of the Cross Corporate Guaranty, the Reel Tennis Entities are obligated to Nike for an amount no less than $211,465.22 plus costs, collection agency fees, expenses, interest,

attorney fees and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

169.    Nike has demanded payment from the Reel Tennis Entities, but the Reel Tennis Entities have failed to pay Nike.

WHEREFORE, Nike requests that judgment be entered against Reel Tennis Aventura, LLC, Reel Tennis, LLC, Reel Tennis Davie, LLC, Reel Tennis Promotions, LLC, and Ace the Game, LLC in an amount no less than $211,465.22, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

## VII.    COUNT VII – INDEMNIFICATION
**Nike USA, Inc. v. Reel Tennis Aventura, LLC, Reel Tennis, LLC, Reel Tennis Davie, LLC, Reel Tennis Promotions, LLC, Ace The Game, LLC, Christopher R. Wilson, and Alexander Giron**

170.    Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

171.    The 2015 Personal Guaranty, the Giron Guaranty, and the Cross Corporate Guaranties require the Defendants to indemnify and hold Nike harmless from all obligations, demands, claims, and liabilities asserted against Nike and against all losses incurred or paid by Nike in any way arising out of or in connection with Nike's transactions with the Reel Tennis Entities.

172.    Despite Nike's demand for payment from Defendants, Defendants have failed to indemnify Nike.

WHEREFORE, Nike requests that judgment be entered against each Defendant in an amount no less than $211,465.22, in addition to all losses incurred or paid by Nike in connection

with the Complaint, and all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

### VIII.   COUNT VIII - UNJUST ENRICHMENT
### PLED IN THE ALTERNATIVE TO COUNTS II-VII
### Nike USA, Inc. v. Reel Tennis Aventura, LLC, Reel Tennis, LLC, Reel Tennis Davie, LLC, Reel Tennis Promotions, and Ace the Game, LLC

173.   Nike incorporates herein by reference each foregoing paragraph as if fully restated herein.

174.   At the request of the Reel Tennis Entities, Nike conferred a benefit upon the Reel Tennis Entities by providing the goods and services described herein and in the exhibits attached hereto.

175.   The Reel Tennis Entities received and accepted the benefit of said goods and services provided by Nike.

176.   At all times material hereto, the Reel Tennis Entities were aware that Nike was providing the aforesaid goods and services and that Nike expected to be paid for such.

177.   At all times material hereto, the Reel Tennis Entities, with the aforesaid knowledge, permitted Nike to provide said goods and services and to incur damages.

178.   At all times material hereto, the Reel Tennis Entities were unjustly enriched by retaining the benefit of receiving said goods and services without paying Nike fair and reasonable compensation.

179.   The Reel Tennis Entities failed to pay Nike despite Nike's demand.

180.   Allowing the Reel Tennis Entities to retain the benefit of said goods and services without paying fair compensation would be unjust.

181.    By reason of the aforesaid unjust enrichment of the Reel Tennis Entities at Nike's expense, an implied contract exists between Nike and the Reel Tennis Entities are obligated to pay Nike the *quantum meruit* value of the goods and services described herein and in the exhibits attached hereto in the amount of $211,465.22.

WHEREFORE, Nike requests that judgment be entered against Reel Tennis Aventura, LLC, Reel Tennis, LLC, Reel Tennis Davie, LLC, Reel Tennis Promotions, LLC, and Ace the Game, LLC in an amount no less than $211,465.22, in addition to all losses incurred or paid by Nike in connection with the Complaint, and all of Nike's costs, collection agency fees, expenses, interest, attorney fees, and fees of corporate counsel incurred in connection with collection efforts (including, without limitation, at trial and on appeal).

Dated: August 8th, 2022

Respectfully submitted,

*/s/ Michael J. Drahos, Esq.*
Michael J. Drahos, Esq.
Florida Bar No. 0617059
**GRAY ROBINSON, P.A.**
515 N. Flagler Drive, Suite 650
West Palm Beach, FL 33401
Telephone (561) 268-5727
Facsimile   (561) 268-5745
michael.drahos@gray-robinson.com

-and-

Anthony M. Saccullo
Mary E. Augustine
A.M. Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Phone: (302) 836-8877
Fax: (302) 836-8787
ams@saccullolegal.com
meg@saccullolegal.com

*Attorneys for Nike USA, Inc.*

23